Judge Marshall
delivered the Opinion of the Court.
William Henderson, having intermarried with Nancy Stevens, one of several co-heirs of James Stevens, deceased, executed, on the 3d day of March, 1830, the following sealed writing: "value received, I assign over and transfer to W. H. Caperton, one hundred dollars of my interest in the estate of my wife, Nancy Stevens, and I hereby request Maj. Thomas Lindsey, guardian to my said wife, to pay over to said Caperton, the above amount out of any money in his hands, or which may come into his hands, of said interest.” Immediately under which, and on the same paper, Thomas Lindsey *255 executed the following: “I, Thomas Lindsey, guardian of the said Nancy Henderson, promise and oblige myself to retain and pay over any money, to the amount of the above order of one hundred dollars, to W. H. Caperton, out of the first money due to the said Nancy Henderson, which may come to my hands, after payment of claims which are now due, or of prior dignity, March 4th, 1830.” Shortly after the date of these writings, Caperton assigned the claim evidenced by them, to Abner Oldham.
A man transfers an interest in his. wife’s patrimony that may come to the hands of her guardian; before any thing is received by him, the wife obtains a divorce: query — whether the assignee’s claim upon the fund, shall be preferred to the wife’s.
In October, 1834, prior to which Nancy Henderson had had issue of the marriage, born alive, a decree was pronounced, at her suit, divorcing her from her husband, William Henderson, “dissolving the marriage contract as to her, and restoring her to all the rights and privileges of an, unmarried woman.” And, in December following,this bill was filed by Oldham, against Henderson, who is alleged and proved to be a non-resident, and against all the other parties above referred to, praying for the satisfaction of his claim, out of the interest of Nancy Henderson, whether consisting of money in the hands of her guardian, or of land descended to her as one of the heirs of James Stevens, her father.
The bill was dismissed by the Circuit Court, and Oldham prosecutes a writ of error for the reversal of the decree.
It appears that, the only estate which Nancy Henderson had, was an undivided interest in a few acres of land and a ferry across the Kentucky river; to all of which her father had but an equitable title by bond, and on which there was a lien for a part of the purchase money remaining unpaid at his death; and that so much of this estate as was not in possession of the widow of Stevens (as her dower, or for want of an assignment of dower) was under the control of Lindsey, who, as guardian of the heirs, received the rents thereon, and was applying them to the payment of debts, and especially of the debt due for the land, As it does not appear that there was, at the time of the divorce, any thing in his hands beyond what was necessary for discharging the lien on the estate, and other debts of the *256 decedent, which, of course, had the precedency of any charge which Henderson could create against either the rents or the land; it is not necessary to decide whether, if there had been any such surplus fund, this assignment by Henderson, would have enabled the assignee to reach it, after the divorce, in preference to the claim of the wife herself.
The husband's right to the possession and use of the wife’s land—independent of the effect of issue of the marriage —continues during the coverture, and no longer; when that ceases, by the wife’s death, or by a divorce, the husband’s right ceases. The same as to his assignee of her interest-who can have no more than his assignor had.
A marriage and birth of living issue do not alone make the husband tenant by the courtesy; that right comes in esse upon the death of the wife, not before; and though it may be that the right would accrue to the husband upon the death of the wife, notwithstanding the marriage contract was dissolved, he has no right to the possession or profits of her estate during the interval between the divorce and her death. So, held that, where a husband, in order to assign over an interest in his wife’s estate, gave an order on her guardian for a certain sum, and she had nothing in the guardian’s hands, but the profits of the land accruing after a divorce, the assignee is not entitled to any thing. The interest to which, the husband may have a right, in case he survives the wife, is too remote and contingent to be made the subject of a decree.
*256 The question which covers the whole case, and therefore, the only one which need be decided, as it is indeed the only one which has been seriously discussed, is whether, after the divorce, Henderson had any such interest in his former wife’s estate (either in the land or its issues,) as could be subjected to the satisfaction of this claim, considering the assignment either as a specific transfer of a portion of his interest in the estate, or a lien upon it, or as the mere evidence of a debt against Henderson, intended to be charged upon this estate, and which, in consequence of his non-residency, might, under our statutes, be the foundation of an attachment, and, if necessary, of a sale of any interest which he had. Even this latter branch of the question might be excluded, as. the case is not presented in the requisite form for subjecting the interest of Henderson, considering him merely as a non-resident debtor. But as we are of opinion that, after the divorce, he had no present interest either in the land or its current issues, this necessarily decides the whole question, and renders any reservation or discrimination as to its different parts, unnecessary.
It has been contended, in argument, that, by the marriage and the birth of living issue, Henderson had a vested interest, as tenant for life, in the land of his wife, which interest was either transferred, or specifically charged, by the assignment to Caperton, and that, as Henderson, at the time of executing this instrument, was capable of transferring or charging his interest in the manner stated, the assignee became vested with that interest to the extent of the value of one hundred dollars, and that his interest could not be affected by the subsequent divorce, or by the subsequent acts of Henderson, which were the cause of the divorce. Without entering *257 into the enquiry whether the instrument in question is any thing more than the acknowledgment of a debt, and an order for its payment out of a particular fund, and admitting, for the purpose of this case, that it is entitled to the same effect as if it had been a mortgage by the husband alone, of his wife’s portion of the estate descended from her father, it is evident that the interest granted, being merely derivative, could not be greater than the interest of the grantor, that it must be subject to the same incumbrances, and could neither commence before it, nor subsist after its termination.
The question then is—what interest had the husband at the date of the instrument? It is a mistake to suppose that, as mere husband, and in virtue of the marriage only, without regard to the birth of issue, he had a life estate. As husband he has a right to enjoy the issues and profits of the land during the coverture, and no longer. And when the coverture ceases, whether by the death of the wife, or by a dissolution of the marriage contract, which is a divorce from the bonds of matrimony, his right of possession and of receiving the profits, depending merely upon the continuance of the state of marriage, ceases with it. And by consequence the right of his assignee, or alienee, (except so far as emblements may be secured to a lessee,) must also terminate.
It is, also, a mistake to suppose that, on the birth of a living child, the husband becomes tenant for life by the courtesy. His estate, as tenant by the courtesy, is not consummated, and does not come in esse until the death of the wife, (Thomas' Coke on Littleton, 557-8,) and whether it ever shall come in esse, depends upon the contingency of his surviving her. Admitting, then, that the right to the wife’s land, as tenant by the courtesy, which is in choate on the birth of a child, and to be consummated by the death of the wife before the husband, is not defeated by a divorce which dissolves the coverture, and terminates the husband’s present right to the possession and profits of her land, it yet follows that from the termination of the coverture, to the death of the wife, the husband has no present interest in the land, *258 which can either be enjoyed by his assignee, or subjected to any debt, or other charge, imposed upon it by himself. And although the husband’s right to be tenant by the courtesy, after the death of his wife, be not defeated by an earlier termination of the coverture, (which is not decided,) and, although, if that be the case, his assignee, or alienee, during the coverture, might, upon the death of the wife, be entitled to enjoy, or subject to his claim according to its nature, the interest of the husband then come in esse, that interest is too contingent and uncertain to be a proper subject for the action of the chancellor before the actual occurrence of the event on which its consummation depends.
We are of opinion, therefore, that the Court did not err in dismissing the bill, and the decree is affirmed.